James D. Curran, Esq.        SBN 126586
Jaime E. Godin, Esq.         SBN 233187
Wolkin · Curran, LLP
555 Montgomery Street, Suite 1100
San Francisco, California 94111
Telephone:    (415) 982-9390
Facsimile:    (415) 982-4328

Attorneys for
GREAT AMERICAN INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | Case No. 1:06-CV-00392-AWI-DLB |
| Plaintiff, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF GREAT AMERICAN INSURANCE COMPANY'S MOTION TO DISMISS AND/OR STRIKE COUNTERCLAIM** |
| M.J. MENEFEE CONSTRUCTION, INC., a California corporation; MICHAEL J. MENEFEE, an individual; and DEBORAH MENEFEE, an individual, | |
| Defendants. | (FRCP 12(b)(6), 12(f)) |
| MICHAEL MENEFEE, an individual, | Date:      August 14, 2006 |
| Counter Claimant, | Time:      1:30 p.m.<br>Dept.:     Courtroom 2<br>Judge:    Hon. Anthony W. Ishii |
| v. | |
| GREAT AMERICAN INSURANCE COMPANY, | |
| Counter Defendant. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT.........................................................................................................2

I.    THE COUNTERCLAIM IS UNTIMELY. ...................................................2

      A.    THE COUNTERCLAIM SHOULD BE DISMISSED
            BECAUSE IT WAS NOT FILED WITHIN THE TIME
            REQUIRED BY THE FEDERAL RULES OF CIVIL
            PROCEDURE........................................................................2

      B.    THE COUNTERCLAIM SHOULD BE DISMISSED
            BECAUSE THIS COURT HAS ENTERED THE
            DEFAULTS OF ALL THREE DEFENDANTS THEREBY
            CUTTING OFF THEIR RIGHT TO APPEAR OR RESPOND
            IN THIS ACTION. ..................................................................3

II.   MICHAEL MENEFEE DOES NOT HAVE STANDING TO ASSERT CLAIMS
      ON BEHALF OF EITHER DEBORAH MENEFEE OR MENEFEE
      CONSTRUCTION, AND, THEREFORE, THE COUNTERCLAIM SHOULD BE
      DISMISSED IN ITS ENTIRETY. .....................................................3

      A.    MICHAEL MENEFEE DOES NOT HAVE STANDING TO
            ASSERT CLAIMS ON BEHALF OF MENEFEE
            CONSTRUCTION, AND, THEREFORE, EACH OF THOSE
            CLAIMS SHOULD BE DISMISSED, ALTERNATIVELY,
            STRICKEN.............................................................................4

III.  THE COUNTERCLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF
      MAY BE GRANTED, AND, THEREFORE, SHOULD BE DISMISSED IN ITS
      ENTIRETY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE
      12(B)(6). .................................................................................9

      A.    STANDARD OF REVIEW...................................................9

      B.    THE COUNTERCLAIM FAILS TO STATE A CLAIM FOR
            "UNFAIR OR DECEPTIVE CLAIM ACTIONS." .............10

            1.    There is No Common Law Cause of Action for "Unfair
                  or Deceptive Claim Actions."....................................10

            2.    Michael Menefee Fails to Allege Any Applicable
                  Statute or Regulation. ..............................................10

      C.    THE COUNTERCLAIM FAILS TO STATE A CLAIM FOR
            BREACH OF CONTRACT. .................................................11

            1.    Michael Menefee Fails to Plead the Elements Required
                  For A Breach of Contract Action; Therefore, He Does
                  Not State A Claim for Breach of Contract...................11

i.

a.  Michael Menefee Fails to Attach a Contract Or Plead the Essential Terms of A Contract; Therefore, He Does Not State A Claim for Breach of Contract ................ 11

b.  Michael Menefee Fails to Allege His Performance or Excuse for Nonperformance Under the Alleged Contract With Great American; Therefore, He Cannot State A Claim for Breach of Contract ........................ 12

c.  Michael Menefee Fails to Allege Great American's Breach Under the Alleged Contract; Therefore, He Cannot State A Claim for Breach of Contract. ......... 13

d.  Michael Menefee Fails to Allege Damages Resulting From The Alleged Breach of Contract; Therefore, He Does Not State A Claim for Breach of Contract. ..................... 13

D.  THE COUNTERCLAIM FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING. ........................................ 14

1.  Michael Menefee Fails to Plead the Requirements for a Breach of the Implied Covenant of Good Faith and Fair Dealing. ............................................. 14

2.  The Implied Covenant of Good Faith and Fair Dealing Cannot Forbid Acts Expressly Authorized by Contract. ........... 14

IV.  MICHAEL MENEFEE'S PRAYER FOR RELIEF MUST BE STRICKEN AS THE COUNTERCLAIM DOES NOT ALLEGE FACTS WHICH WOULD CONSTITUTE AN ADEQUATE SHOWING OF LOST PROFIT, REVENUE OR PUNITIVE DAMAGES AND SHOULD BE STRICKEN PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(F). ...................... 22

A.  LEGAL STANDARD ........................................ 22

B.  MICHAEL MENEFEE DOES NOT STATE FACTS SUFFICIENT TO CONSTITUTE A CLAIM FOR PUNITIVE DAMAGES ................................................ 23

1.  California Law Governs Michael Menefee's Substantive Claim for Punitive Damages. .................. 23

2.  California Civil Code section 3294 Mandates That In Order to Plead Punitive Damages, Michael Menefee Must Prove By Clear and Convincing Evidence that Great American Has Been Guilty of Oppression, Fraud or Malice. .......................................... 23

3.  California Law Does Not Allow the Recovery of Punitive Damages for Actions Based on Contract. ................. 25

a.  A Cause of Action for The Implied Covenant of Good Faith and Fair Dealing Does Not Allow the Recovery of Punitive Damages Because it is Based in Contract. ............. 25

ii.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

           b.      Punitive Damages Should Not Be Recovered On A Cause of Action for "Unfair and Deceptive Claim Actions" Because It Is Not Supported by Common Law or Statute............................................................................26

C.    MICHAEL MENEFEE DOES NOT STATE FACTS SUFFICIENT TO CONSTITUTE A PRAYER FOR DAMAGES FOR LOST PROFIT.........................................................26

        1.      Michael Menefee Does Not Have Standing to Request Damages For Lost Profit...........................................................26

        2.      Michael Menefee Fails to Plead Damages For Lost Profits With Specificity Pursuant to Federal and California Law; Therefore, His Claim for Lost Profits Should Be Stricken. ......................................................27

D.    MICHAEL MENEFEE DOES NOT STATE FACTS SUFFICIENT TO CONSTITUTE A PRAYER FOR LOST REVENUE.....................................................................................28

        1.      Michael Menefee Does Not Have Standing to Request Damages for Lost Revenue.......................................................28

        2.      Michael Menefee Fails To Plead Damages For Lost Revenue With The Specificity Required By Federal And California Law; Therefore, The Claim For Lost Revenue Should Be Stricken. ....................................................28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF      CASE NO. 1:06-CV-00392-AWI-DLB
GREAT AMERICAN INSURANCE COMPANY'S MOTION TO DISMISS

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

*Ackra Direct Marketing Corp. v. Fingerhut Corp.*
  86 F.3d 852, 855 (8th Cir. 1996) .................................................................................. 3

5

6

*American Dredging Co. v. Miller*
  510 U.S. 443, 454 (1994).................................................................................... 23, 27

7

*Balfour, Guthrie & Co. v. Gourmet Farms*
  108 Cal. App. 3d 181, 191 (1980) .............................................................................. 15

8

*Balistreri v. Pacifica Police Dept.*
  901 F.2d 696, 699 (9th Cir. 1988) ................................................................................ 9

9

10

*Brandt v. Lockheed Missiles & Space Co.*
  154 Cal. App. 3d 1124, 1129-1130 (1984) ................................................................ 15

11

*Bureerong v. Uvawas*
  922 F. Supp. 1450, 1478 (C.D. Cal. 1996) ................................................................ 22

12

13

*Cahill v. Liberty Mut. Ins. Co.*
  80 F.3d 336, 338 (9th Cir. 1996) .................................................................................. 9

14

*Canady v. Erbe Elektromedizin GmbH*
  307 F.Supp.2d 2, 7 (D DC 2004) .................................................................................. 2

15

16

*Careau & Co. v. Security Pac. Business Credit*
  222 Cal.App.3d 1371, 1388-1389 (1990)................................................................... 12

17

*Carma Developers, Inc. v. Marathon Development California, Inc.*
  2 Cal.4th 372, 374 (1992).......................................................................................... 14

18

19

*Carpenter Foundation v. Oakes*
  26 Cal. App. 3d 784, 800 (1972) ............................................................................... 27

20

*Cates Construction v. Talbot Partners*
  21 Cal 4th 28, 43 (1999) ........................................................................................... 25

21

22

*Clifton v. Tomb*
  21 F.2d 893, 897 (4th Cir. 1927) .................................................................................. 3

23

*Conley v. Gibson*
  355 U.S. 41, 45-46 (1957) ............................................................................................ 9

24

25

*Construction Protective Services v. TIG Specialty Insurance Co.*
  29 Cal.4th 189, 199 (2002) ........................................................................................ 11

26

*Cutting Fruit Packing Co. v. Canty*
  141 Cal. 692, 695 (1904) ........................................................................................... 11

27

28

iv.

*Erie R. Co. v. Tompkins*
   304 U.S. 64, 78 (1938)........................................................................ 10, 23, 27

*Gerdlund v. Electronic Dispensers International*
   190 Cal. App. 3d 263, 277-278 (1987) ............................................... 15

*Gilmore v. Lycoming Fire Insurance Co.*
   55 Cal. 123, 124 (1880) .......................................................................... 11

*Hall v. Berkell*
   130 Cal. App. 2d 800, 803-805 (1955) ............................................... 24

*Holly Sugar Co. v. Goshen Co. Cooperative Beet Growers Ass'n.*
   725 F.2d 564, 567 (10th Cir. 1984) ...................................................... 3

*In Re Delorean Motor Co.*
   991 F.2d 1236, 1240 (9th Cir.) ............................................................. 10

*Jones v. H.F. Ahmanson & Co.*
   1 Cal. 3d 93, 107 (1969) ........................................................................ 26, 28

*Lambert v. Haskell*
   80 Cal. 611, 612 (1889) .......................................................................... 11

*Lane v. Storke*
   10 Cal.App. 347, 352 (1909) ................................................................. 13

*Lewis Jorge Construction Management v. Pomona Unified School District*
   34 Cal. 4th 960, 975 (2004) .................................................................. 27, 28

*McNulty v. New Richmond Land Co.*
   44 Cal.App. 744, 747 (1919) ................................................................. 12

*Myers Building Industries, Ltd. v. Interface Technology, Inc.*
   13 Cal. App. 4th 949, 960 (1993) ......................................................... 25

*Pneucrete Corp. v. United States Fidelity & Guaranty Co.*
   7 Cal.App.2d 733, 741 (1935) ............................................................... 11

*Poirier v. Gravel*
   88 Cal. 79, 82 (1891) .............................................................................. 13

*San Francisco Milling Co. v. Mordecai*
   134 Cal.App. 755, 759 (1933) ............................................................... 12

*Smith v. San Francisco*
   225 Cal.App.3d 38, 49 (1990) .............................................................. 14

*Snyder v. United Properties Co.*
   53 Cal.App. 428, 431 (1921) ................................................................. 11

*Southall v. Security Title Ins. & Guarantee Co.*
   112 Cal.App.2d 321, 323 ....................................................................... 13

*Tapley v. Lockwood Green Engineers, Inc.*
   502 F.2d 559, 560 (8th Cir. 1974) ........................................................ 23

v.

*Vinci v. Waste Management, Inc.*
  36 Cal. App. 4th 1811, 1815 (1995) ...................................................................... 26, 28

*Walsh v. Standart*
  174 Cal. 807, 164 (1917) ............................................................................................ 11

*Ward v. Clay*
  82 Cal. 502, 504 (1890) ............................................................................................... 11

*Weisbuch v. County of Los Angeles*
  119 F.3d 778, 783, n.1 (9th Cir. 1997) ........................................................................ 9

*Wilkerson v. Butler*
  229 F.R.D. 166 (E.D.Cal. 2005) ............................................................................... 23

*Wolf v. Superior Court*
  107 Cal. App. 4th 25, 31 (2003) ............................................................................... 25

**Statutes**

California Civil Code section 3294(a) ........................................................................... 23

California Civil Code section 3301 ......................................................................... 27, 28

California Code of Civil Procedure section 430.010(g) ................................................ 11

**Rules**

Federal Rule of Civil Procedure 10(c) .......................................................................... 11

Federal Rule of Civil Procedure 12(a)(1)(A) .............................................................. 2, 3

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 1, 9, 10

Federal Rule of Civil Procedure 12(f) ....................................................................... 1, 22

Federal Rule of Civil Procedure 55(a) ............................................................................ 3

Federal Rule of Civil Procedure section 55(c) ............................................................... 3

Local Rule 83-183 ............................................................................................... 3, 4, 29

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF          CASE NO. 1:06-CV-00392-AWI-DLB
GREAT AMERICAN INSURANCE COMPANY'S MOTION TO DISMISS

1        Plaintiff GREAT AMERICAN INSURANCE COMPANY ("Great American")

2 hereby submits this Memorandum of Points and Authorities in support of its Motion to

3 Dismiss and/or Strike the Counterclaim of defendant MICHAEL J. MENEFEE (Michael

4 Menefee") pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil

5 Procedure 12(f).

6        The pleading filed by Michael Menefee was erroneously labeled as a "Cross-

7 Complaint."  Great American will refer to it as "the Counterclaim."  Additionally, in the

8 Counterclaim, Michael Menefee refers to himself as "Plaintiff," even though he is actually a

9 defendant and counter-claimant.  For ease of reference, Great American will refer to

10 defendants M.J. MENEFEE CONSTRUCTION, INC., MICHAEL J. MENEFEE and

11 DEBORAH MENEFEE collectively as "Defendants," and defendant M.J. MENEFEE

12 CONSTRUCTION, INC. as "Menefee Construction."

13 **<u>INTRODUCTION</u>**

14        On or about October 26, 2001, Defendants entered into an Agreement of Indemnity

15 ("Indemnity Agreement") with Great American, whereby Defendants agreed to defend and

16 indemnify Great American from and against any and all liability for losses, costs and/or

17 expenses, in exchange for which Great American agreed to issue, in its sole discretion,

18 payment bonds, performance bonds, and a license bonds ("the Bonds") on behalf of

19 Menefee Construction.  As set forth more fully in Great American's Complaint ("the

20 Complaint"), claims have been made against the Bonds by project owners, subcontractors,

21 suppliers and materialmen.  Great American anticipates incurring a total loss in excess of $1

22 million as a result of these claims.  Pursuant to the Indemnity Agreement, Defendants are

23 expressly obligated to reimburse Great American for all of the losses, costs and/or expenses

24 related to these claims.

25        On April 6, 2006, in response to the substantial liability Great American has incurred

26 as a result of having issued the Bonds, Great American filed this action to recover the

27 entirety of its losses from Defendants.

28 ///

1.

1    On June 7, 2006, the Clerk of the Court entered the defaults of all three Defendants.

2    On June 28, 2006, Michael Menefee filed the Counterclaim, purportedly on behalf of

3    himself, his wife, Deborah Menefee, and Menefee Construction, a California corporation.

4    The Counterclaim consists of three causes of action:  Breach of the Implied Covenant of

5    Good Faith and Fair Dealing, Unfair or Deceptive Claim Actions, and Failure of Contractual

6    Obligations (which Great American assumes to mean breach of contract).

7    The Counterclaim is untimely, and Michael Menefee does not have standing to sue on

8    behalf of either Menefee Construction or Deborah Menefee.  For those reasons alone, the

9    Counterclaim must be dismissed, in its entirety.  Michael Menefee also fails to state a claim

10   on which relief could be granted, and, therefore, the Counterclaim should be dismissed or,

11   alternatively, stricken, in its entirety.  Finally, Michael Menefee fails to allege facts sufficient

12   to constitute a claim for lost profit, lost revenue, or punitive damages, and, therefore, the

13   entirety of the prayer for relief should be stricken.

14                               **<u>ARGUMENT</u>**

15   **I.    THE COUNTERCLAIM IS UNTIMELY.**

16            **A.    THE COUNTERCLAIM SHOULD BE DISMISSED BECAUSE IT
                      WAS NOT FILED WITHIN THE TIME REQUIRED BY THE
17                    FEDERAL RULES OF CIVIL PROCEDURE.**

18            Federal Rule of Civil Procedure 12(a)(1)(A) requires that a defendant's answer is

19   due within twenty (20) days after service of the summons and complaint upon the defendant.

20   An answer or other responsive pleading filed beyond the time permitted by the Federal

21   Rules of Civil Procedure may be stricken as untimely if the pleader failed to obtain from the

22   court an extension of time.  (*Canady v. Erbe Elektromedizin GmbH*, 307 F.Supp.2d 2, 7 (D

23   DC 2004).)

24            On April 6, 2006, Great American filed suit against Defendants.

25            On May 30, 2006, after Defendants failed to file a responsive pleading, Great

26   American filed a request for entry of default for each Defendant.

27            On June 7, 2006, the Clerk of the Court entered the defaults of each Defendant.

28   ///

                                    2.

1  Defendants have not moved to set aside the defaults, and are in violation of the

2  Federal Rule of Civil Procedure 12(a)(1)(A).  Therefore, the Counterclaim should be

3  dismissed in its entirety, without leave to amend.

4        **B.**     **THE COUNTERCLAIM SHOULD BE DISMISSED BECAUSE THIS
   COURT HAS ENTERED THE DEFAULTS OF ALL THREE

5  DEFENDANTS THEREBY CUTTING OFF THEIR RIGHT TO
   APPEAR OR RESPOND IN THIS ACTION.**

6

7  Entry of a defendant's default cuts off his or her right to appear in the action, or to

8  present evidence.  (*Clifton v. Tomb*, 21 F.2d 893, 897 (4th Cir. 1927).)   Additionally, the

9  court clerk's entry of default pursuant to Federal Rule of Civil Procedure 55(a) is a non-

10 appealable interlocutory order.  (*Ackra Direct Marketing Corp. v. Fingerhut Corp.*, 86 F.3d

11 852, 855 (8th Cir. 1996) (*dictum*).)  Pursuant to Federal Rule of Civil Procedure section

12 55(c), following the entry of default the only procedure available is a motion to set aside the

13 default.

14 On June 7, 2006, the Clerk of the Court entered defaults against all three Defendants.

15 None of Defendants have filed any pleading which would provide relief from the Clerk's

16 Entries of Default pursuant to the requirements of Federal Rule of Civil Procedure 55(c).

17 For that reason, all of Defendants are barred from filing any pleadings in this matter which

18 would constitute an appearance or the presentation of evidence.  Therefore, the

19 Counterclaim should be dismissed in its entirety.

20 **II.**     **MICHAEL MENEFEE DOES NOT HAVE STANDING TO ASSERT
   CLAIMS ON BEHALF OF EITHER DEBORAH MENEFEE OR MENEFEE

21 CONSTRUCTION, AND, THEREFORE, THE COUNTERCLAIM SHOULD
   BE DISMISSED IN ITS ENTIRETY.**

22

23 Where a pleading reveals on its face that the pleading party lacks standing to sue, a

24 motion to dismiss for failure to state a claim will lie.  (*Holly Sugar Co. v. Goshen Co.*

25 *Cooperative Beet Growers Ass'n*, 725 F.2d 564, 567 (10th Cir. 1984).)

26 United States District Court, Eastern District of California, Local Rule 83-183,

27 provides in pertinent part:

28 ///

3.

1       (a)    Rules Governing Appearance.  **Any individual who is**

2   **representing himself or herself without an attorney must appear**

3   **personally** or by courtesy appearance by an attorney admitted to the Bar

4   of this Court **and may not delegate that duty to any other individual,**

5   **including husband or wife**, or any other party on the same side appearing

6   without an attorney.  Any individual representing himself or herself

7   without an attorney is bound by the Federal Rules of Civil or Criminal

8   Procedure and by these Local Rules.  All obligations placed on "counsel"

9   by these Local Rules apply to individuals <u>in propria persona</u>.  Failure to

10   comply herewith may be ground for dismissal, judgment by default, or any

11   other sanction appropriate under these Rules.  **A corporation or other**

12   **entity may appear only by an attorney.**

13   (Local Rule 83-183 (emphasis added).)

14       The Counterclaim was signed and filed by Michael Menefee, who is not an attorney.

15   Pursuant to Local Rule 83-183, Michael Menefee does not have standing to sue on behalf of

16   Deborah Menefee, nor on behalf of Menefee Construction.  Therefore, the Counterclaim

17   should be dismissed in its entirety as to Deborah Menefee and Menefee Construction.

18       **A.**    **MICHAEL MENEFEE DOES NOT HAVE STANDING TO ASSERT**

19   **CLAIMS ON BEHALF OF MENEFEE CONSTRUCTION, AND, THEREFORE, EACH OF THOSE CLAIMS SHOULD BE**

20   **DISMISSED, ALTERNATIVELY, STRICKEN**.

21       The Counterclaim asserts the following eight (8) allegations:

22       1.    "[Great American's] failure to continue bonding . . . has caused

23       lost profits and punitive damages."  Counterclaim, 1:13-14.

24       2.    "[Great American's] failure to . . . properly investigate claims has

25       caused lost profits and punitive damages."  Counterclaim, 1:13-14.

26       3.    "[Great American's] improper investigation resulted in the take

27       over agreement with Bond Obligee on September 27, 2005."

28       Counterclaim, 1:15-16.

4.

1
2
3
4

4.    "[Michael Menefee] submitted pay estimate (sic) to [Great American] and was informed by [Great American] that 'all we have done on the Madera County projects is monitor the completion of the work.'"  Counterclaim, 2:2-4.

5
6
7
8
9

5.    "Had [Great American] supported [Michael Menefee] in denial of the termination on the Madera County projects and City of Fresno projects, [Michael Menefee] would have been allowed the opportunity to resolved (sic) the dispute and recover additional compensation from obliges (sic)."  Counterclaim, 2:4-7.

10
11
12
13
14
15

6.    "Actions by [Great American] interfering with [Michael Menefee's] business with take over agreements, and letters to agencies that have contracts with [Michael Menefee] to not pay [Michael Menefee] for work performed, has allowed the obliges (sic) to recover an amount greater than would have been recovered if [Great American] had not acted."  Counterclaim, 2:8-11.

16
17
18

7.    "[Great American's] actions have resulted in financial hardship on [Michael Menefee] resulting in additional bond claims."  Counterclaim, 2:12-13.

19
20
21
22

8.    "Actions of [Great American] that resulted in the interference of normal business practices of [Michael Menefee] have voided the contractual obligation of the Indemnity Agreement."  Counterclaim, 2:13-15.

23   As discussed in greater detail below, each of these allegations may only be asserted

24   by Menefee Construction, a California corporation.  Pursuant to Local Rule 83.183,

25   Menefee Construction "may appear only by an attorney."  As Menefee is not an attorney,

26   each of these allegations should be dismissed or, alternatively, stricken.

27   ///

28   ///

5.

1.     **"[Great American's] failure to continue bonding . . . has caused lost profits and punitive damages."  Counterclaim, 1:13-14.**

All of the Bonds referred to in this litigation were issued by Great American on behalf of Menefee Construction, not Michael Menefee as an individual.  Therefore, only Menefee Construction could possibly assert a claim of loss of bonding.  Because Michael Menefee is prohibited from asserting any allegation on behalf of Menefee Construction, this allegation should be dismissed, or alternatively, stricken, from the Counterclaim.

2.     **"[Great American's] failure to . . . properly investigate claims has caused lost profits and punitive damages."  Counterclaim, 1:13-14.**

Again, all of the Bonds referred to in this litigation were issued by Great American on behalf of Menefee Construction, not Michael Menefee as an individual.  Consequently, any claim investigation made by Great American must pertain to claims on the Bonds issued on behalf of Menefee Construction.  Therefore, only Menefee Construction could possibly assert a claim concerning Great American's claim investigation.  Because Michael Menefee is prohibited from asserting any allegation on behalf of Menefee Construction, this allegation should be dismissed, or alternatively, stricken, from the Counterclaim.

3.     **"[Great American's] improper investigation resulted in the take over agreement with Bond Obligee on September 27, 2005."  Counterclaim, 1:15-16.**

All of the Bonds referred to in this litigation, including the two performance bonds which were the subjects of the two Takeover Agreements entered into with the County of Madera, were only issued on behalf of Menefee Construction.  Consequently, any claim investigation made by Great American must pertain to claims on the Bonds issued on behalf of Menefee Construction.  Therefore, only Menefee Construction could possibly assert a claim concerning Great American's claim investigation.  Because Michael Menefee is prohibited from asserting any allegation on behalf of Menefee Construction, this allegation should be dismissed, or alternatively, stricken, from the Counterclaim.

///

4.      **"[Michael Menefee] submitted pay estimate (sic) to [Great American] and was informed by [Great American] that 'all we have done on the Madera County projects is monitor the completion of the work.'"** Counterclaim, 2:2-4.

All of the Bonds referred to in this litigation, including the two performance bonds which were the subjects of the two Takeover Agreements entered into with the County of Madera, were only issued on behalf of Menefee Construction.  If any "pay estimates" were submitted to Great American, then they must have been submitted on behalf of Menefee Construction.  Therefore, only Menefee Construction could possibly assert a claim concerning the submission of "pay estimates" and Great American's response thereto.  Because Michael Menefee is prohibited from asserting any allegation on behalf of Menefee Construction, this allegation should be dismissed, or alternatively, stricken, from the Counterclaim.

5.      **"Had [Great American] supported [Michael Menefee] in denial of the termination on the Madera County projects and City of Fresno projects, [Michael Menefee] would have been allowed the opportunity to resolved (sic) the dispute and recover additional compensation from obliges (sic)."** Counterclaim, 2:4-7.

Menefee Construction entered into the contracts with the County of Madera and the City of Fresno, not Michael Menefee.  Great American issued performance bonds and payment bonds for the two contracts with the County of Madera and the two contracts with the City of Fresno on behalf of Menefee Construction, not Michael Menefee.  Therefore, only Menefee Construction could possibly assert a claim concerning Great American's responses to the terminations made by the County of Madera and the City of Fresno, and the opportunity of Menefee Construction to resolve the disputes and the recovery of additional compensation.  Because Michael Menefee is prohibited from asserting any allegation on behalf of Menefee Construction, this allegation should be dismissed, or alternatively, stricken, from the Counterclaim.

7.

6.   **"Actions by [Great American] interfering with [Michael Menefee's] business with take over agreements, and letters to agencies that have contracts with [Michael Menefee] to not pay [Michael Menefee] for work performed, has allowed the obliges (sic) to recover an amount greater than would have been recovered if [Great American] had not acted." Counterclaim, 2:8-11.**

All of the Bonds referred to in this litigation, including any of the Bonds related to the alleged Takeover Agreements, were only issued on behalf of Menefee Construction, not Michael Menefee.  The only contracts that were bonded by Great American were entered into by Menefee Construction, not Michael Menefee.  Great American directed obligees (i.e., the entities to which performance may be owed under a performance bond) not to make payment to Menefee Construction, not Michael Menefee.  Therefore, only Menefee Construction could possibly assert a claim concerning any alleged interference with its business or any alleged direction not to pay it.  Because Michael Menefee is prohibited from asserting any allegation on behalf of Menefee Construction, this allegation should be dismissed, or alternatively, stricken, from the Counterclaim.

7.   **"[Great American's] actions have resulted in financial hardship on [Michael Menefee] resulting in additional bond claims." Counterclaim, 2:12-13.**

All of the "actions" allegedly taken by Great American pertain to the Bonds issued on contracts entered into by Menefee Construction, not Michael Menefee.  Even if this Court assumes that there have been "additional bond claims," all of those claims must pertain to bonds issued on behalf of Menefee Construction.  Therefore, only Menefee Construction could possibly assert a claim concerning any alleged financial hardship resulting from additional bond claims.  Because Michael Menefee is prohibited from asserting any allegation on behalf of Menefee Construction, this allegation should be dismissed, or alternatively, stricken, from the Counterclaim.

///

8.

8. **"Actions of [Great American] that resulted in the interference of normal business practices of [Michael Menefee] have voided the contractual obligation of the Indemnity Agreement." Counterclaim, 2:13-15.**

All of the alleged "actions" allegedly taken by Great American pertain to bonds issued on contracts entered into by Menefee Construction, not Michael Menefee. Therefore, only Menefee Construction could possibly assert a claim concerning any alleged interference with business. Because Michael Menefee is prohibited from asserting any allegation on behalf of Menefee Construction, this allegation should be dismissed, or alternatively, stricken, from the Counterclaim.

**III. THE COUNTERCLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED, AND, THEREFORE, SHOULD BE DISMISSED IN ITS ENTIRETY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6).**

    **A. STANDARD OF REVIEW**.

A Federal Rule of Civil Procedure 12(b)(6) motion tests the legal sufficiency of a claim. A claim will be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 338 (9th Cir. 1996).) In deciding such a motion, all material allegations of the pleading are accepted as true, as well as all reasonable inferences to be drawn from them. (*Cahill,* 80 F.3d at 338.) Dismissal is proper where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. (*Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1988).)

A Rule 12(b)(6) motion to dismiss for failure to state a claim can be used when the pleading party has included allegations in the pleading that, on their face, disclose some absolute defense or bar to recovery. "If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts." (*Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783, n.1 (9th Cir. 1997).)

9.

1    While the pleading of a Rule 12(b)(6) motion is procedural in nature and governed

2 by federal law, in a diversity case, the district court must apply the substantive law of the

3 state in which it sits.  (*Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).)  Because this is a

4 diversity case, this Court must apply the substantive law of California, and must regard the

5 opinions of the California Supreme Court as controlling the legal issues raised herein.

6    **B.    THE COUNTERCLAIM FAILS TO STATE A CLAIM FOR
         "UNFAIR OR DECEPTIVE CLAIM ACTIONS."**

7

8         **1.    There is No Common Law Cause of Action for "Unfair or
              Deceptive Claim Actions**."

9    This Court does not have to accept conclusory allegations or generalized legal

10 characterizations from Michael Menefee, nor does it have to accept unreasonable inferences

11 or Michael Menefee's deductions of fact.  (*In Re Delorean Motor Co*., 991 F.2d 1236, 1240

12 (9th Cir. 1993).)

13    Great American is unaware of any common law cause of action for "Unfair or

14 Deceptive Claim Actions."  Great American has no way of responding to such allegations,

15 because it has no way of knowing what elements or requirements are necessary for proper

16 pleading.  If Michael Menefee is relying on common law to assert his cause of action against

17 Great American for "Unfair or Deceptive Claim Actions," it should be dismissed by this

18 Court in its entirety for failure to state a claim upon which relief can be granted.

19         **2.    Michael Menefee Fails to Allege Any Applicable Statute or
              Regulation**.

20

21    If a cause of action is not rooted in the common law, then it must be alleged pursuant

22 to an applicable statute or regulation.  Michael Menefee has not alleged a violation of any

23 statute or regulation in his Counterclaim, and, therefore, Great American is unable to

24 determine what allegations, if any, may constitute a cause of action for "Unfair or Deceptive

25 Claim Actions."  If Michael Menefee has no statute or regulation to support his cause of

26 action against Great American for "Unfair or Deceptive Claim Actions," it should be

27 dismissed by this Court in its entirety for failure to state a claim upon which relief can be

28 granted.

10.

C.      **THE COUNTERCLAIM FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT**.

      1.      **Michael Menefee Fails to Plead the Elements Required For A Breach of Contract Action; Therefore, He Does Not State A Claim for Breach of Contract**.

The assertion of a cause of action for breach of contract requires a pleading of the following four elements:  the existence of a contract, the pleading party's performance or excuse for nonperformance, the opposing party's breach, and damages suffered by the pleading party.  (*Cutting Fruit Packing Co. v. Canty*, 141 Cal. 692, 695 (1904); *Walsh v. Standart*, 174 Cal. 807, 164 (1917).)

In asserting a claim for breach of contract against Great American, Michael Menefee has failed to sufficiently plead even one of the four requirements necessary under California law.  For that reason, his cause of action against Great American for breach of contract should be dismissed in its entirety.

      a.      **Michael Menefee Fails to Attach a Contract Or Plead the Essential Terms of A Contract; Therefore, He Does Not State A Claim for Breach of Contract**.

In order to plead a cause of action for breach of contract, the pleading party must first set out an allegation of the existence of a contract and whether it is written, oral, or implied by conduct.  (California Code of Civil Procedure section 430.010(g).)

There are two alternatives to pleading a written contract.  Under California and federal law, the pleading party can allege the contract's making, and then it must be set out verbatim in the body of the complaint or attached as an exhibit to the complaint and incorporated by reference.  (*Lambert v. Haskell*, 80 Cal. 611, 612 (1889); *Ward v. Clay*, 82 Cal. 502, 504 (1890); Federal Rule of Civil Procedure 10(c).)  Alternatively, the pleading party can allege the contract's making, and plead the contract according to its legal effect or allege the substance of its relative terms.  (*Snyder v. United Properties Co*., 53 Cal.App. 428, 431 (1921); *Pneucrete Corp. v. United States Fidelity & Guaranty Co*., 7 Cal.App.2d 733, 741 (1935); *Construction Protective Services v. TIG Specialty Insurance Co*., 29 Cal.4th 189, 199 (2002).)  In either alternative, the essential terms of the contract must be pled.  (*Gilmore v. Lycoming Fire Insurance Co.*, 55 Cal. 123, 124 (1880).)

11.

1     In asserting his cause of action for breach of contract against Great American,

2 Michael Menefee has not satisfied any of these requirements.  The only reference to any

3 document that could be considered a contract is his generalized reference to the "Indemnity

4 Agreement."  He gives no explanation of the Indemnity Agreement, nor does he even

5 indicate if the Indemnity Agreement is the contract which he contends Great American

6 allegedly has breached.  He has not alleged the existence of a specific contract between

7 himself and Great American, nor has he indicated whether it is written, oral, or implied.  He

8 fails to attach the contract to the Counterclaim as an exhibit, or allege the substance of its

9 relative terms.  Because Michael Menefee did not comply with these pleading requirements,

10 his cause of action against Great American for breach of contract should be dismissed in its

11 entirety.

12               **b.    Michael Menefee Fails to Allege His Performance or**
                      **Excuse for Nonperformance Under the Alleged Contract**
13                    **With Great American; Therefore, He Cannot State A**
                      **Claim for Breach of Contract**.

14

15     A plaintiff cannot enforce a defendant's obligation unless the plaintiff has performed

16 the conditions precedent imposed on him by the contract he is alleging.  (*McNulty v. New*

17 *Richmond Land Co*., 44 Cal.App. 744, 747 (1919); *Careau & Co. v. Security Pac. Business*

18 *Credit*, 222 Cal.App.3d 1371, 1388-1389 (1990).)  In the absence of the plaintiff's

19 performance, he must generally allege his excuse for nonperformance of the alleged

20 contract.  (*San Francisco Milling Co. v. Mordecai*, 134 Cal.App. 755, 759 (1933).)

21     In the Counterclaim, Michael Menefee fails to plead any indication that he

22 performed under that alleged contract.  Because the essential terms of the alleged contract

23 are not set forth, there is no way of knowing what type of performance was required of

24 Michael Menefee under that alleged contract.  Michael Menefee also does not allege any

25 excuse for nonperformance of the alleged contract with Great American.  Because he fails to

26 plead these required elements, Michael Menefee's cause of action for breach of contract

27 should be dismissed in its entirety.

28 ///

1

2

   **c.**   **Michael Menefee Fails to Allege Great American's Breach Under the Alleged Contract; Therefore, He Cannot State A Claim for Breach of Contract**.

3

  In order to successfully plead a cause of action for breach of contract, the plaintiff

4

must allege with certainty that the defendant breached the alleged contract between the two

5

parties.  (*Poirier v. Gravel*, 88 Cal. 79, 82 (1891).)

6

  As discussed above, Michael Menefee asserts eight (8) allegations in the

7

Counterclaim.  (*See infra*, 5:21 – 6:22).  Other than blindly making these allegations,

8

Michael Menefee fails to indicate if any of these allegations were required under a contract

9

between Michael Menefee and Great American and, if so, how Great American breached

10

any of the alleged requirements.  Because Michael Menefee fails to plead these essential

11

elements, his cause of action for breach of contract should be dismissed in its entirety.

12

13

   **d.**   **Michael Menefee Fails to Allege Damages Resulting From The Alleged Breach of Contract; Therefore, He Does Not State A Claim for Breach of Contract**.

14

  The fourth and final element for an allegation of breach of contract is that the

15

plaintiff must allege damages resulting from the defendant's breach of contract.  (*Southall v.*

16

*Security Title Ins. & Guarantee Co*., 112 Cal.App.2d 321, 323 (1952); *Lane v. Storke*, 10

17

Cal.App. 347, 352 (1909).)

18

  Michael Menefee fails to plead any damages resulting from an alleged breach of

19

contract.  He indicates that he has suffered financial hardship, but gives no explanation of

20

what type of financial hardship or to what extent.  Additionally, he does not state how Great

21

American's actions constitute a breach of contract or how those actions directly caused the

22

financial hardship.  In his prayer for relief he claims damages for lost profit and revenue;

23

however, he fails to indicate with specificity an accounting of the damages for lost profit and

24

revenue.  Because he fails to allege these required elements, his cause of action for breach of

25

contract should be dismissed in its entirety.

26

///

27

///

28

///

13.

**D.    THE COUNTERCLAIM FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**.

**1.    Michael Menefee Fails to Plead the Requirements for a Breach of the Implied Covenant of Good Faith and Fair Dealing**.

In order to allege a breach of the covenant of good faith and fair dealing, a contractual relationship between the parties must exist.  (*Smith v. San Francisco*, 225 Cal.App.3d 38, 49 (1990).)  As previously stated, Michael Menefee fails to plead the existence of a contractual relationship with Great American which would allow him to assert allegations of a breach of the implied covenant of good faith and fair dealing.  Additionally, he fails to allege in what way, if any, Great American breached the implied covenant of good faith and fair dealing.  Therefore, the cause of action for breach of the implied covenant of good faith and fair dealing should be dismissed.

**2.    The Implied Covenant of Good Faith and Fair Dealing Cannot Forbid Acts Expressly Authorized by Contract**.

The covenant of good faith and fair dealing may not prohibit a party from doing that which is expressly permitted by the terms of a contract.  (*Carma Developers, Inc. v. Marathon Development California, Inc*., 2 Cal.4th 372, 374 (1992).)  "The general rule [regarding the covenant of good faith] is plainly subject to the exception that the parties may, by express provisions of the contract, grant the right to engage in the very acts and conduct which would otherwise have been forbidden by an implied covenant of good faith and fair dealing. . . .  This is in accord with the general principle that, in interpreting a contract 'an implication . . . should not be made when the contrary is indicated in clear and express words."  (*Carma*, 2 Cal.4th at 374 (citing 3 Corbin, *Contracts* § 564, p. 298 (1960).)  Stated simply, if certain conduct is expressly authorized by the terms of a contract, "no covenant of good faith and fair dealing can be implied which forbids such acts and conduct."  (*Id*.)

In *Carma*, Marathon Development ("Marathon") leased commercial real estate to Carma Developers ("Carma") pursuant to a lease agreement that included terms that allowed Marathon to terminate the lease in the event that Carma subleased any of the property.

14.

1  (*Carma*, 2 Cal.4th at 351-352.)  Carma, after substantially improving the property, sought

2  Marathon's approval to sublease portions of the property.  In response, Marathon terminated

3  the lease in its entirety and contacted the interested subtenant directly to negotiate a new

4  lease.  Upon termination, Carma initiated an action seeking damages for breach of the lease

5  and the implied covenant of good faith and fair dealing.  (*Id*.)  In essence, Carma argued that

6  despite the express language of the lease that granted Marathon the right to terminate the

7  lease and negotiate directly with the subtenant, the course of conduct was not reasonable and

8  thus a violation of the covenant of good faith and fair dealing.  At trial, judgment was

9  entered in favor of Carma on the good faith and fair dealing cause of action.  The Court of

10  Appeals affirmed, holding that there was substantial evidence that Marathon breached the

11  covenant of good faith.  (*Id.*)  The Supreme Court reversed and directed that judgment be

12  entered for Marathon.

13  　　　　In reversing, the Supreme Court held that where express contract terms contemplate

14  a course of action, the good faith standard cannot be read to prohibit acts in accordance with

15  the contract.  (*Id.* at 374.)  California Courts of Appeal are in accord.  (*Balfour, Guthrie &*

16  *Co. v. Gourmet Farms*, 108 Cal.App. 3d 181, 191 (1980) ("acts in accord with the terms of

17  one's contract cannot without more be equated with bad faith"); *Brandt v. Lockheed Missiles*

18  *& Space Co.*, 154 Cal.App.3d 1124, 1129-1130 (1984) (if language of the contract is clear,

19  and permits a discretionary choice to grant an award, it cannot be said that making the

20  choice violates the duty of good faith and fair dealing); *Gerdlund v. Electronic Dispensers*

21  *International*, 190 Cal.App.3d 263, 277-278 (1987) ("no obligation can be implied . . .

22  which would result in the obligation of a right expressly given under a contract").)

23  　　　　In this case, each of Great American's alleged acts in breach of the implied covenant

24  of good faith and fair dealing are expressly contemplated and permitted by the Indemnity

25  Agreement.

26  　　　　As discussed in greater detail below, each of the allegations asserted in the

27  Counterclaim are authorized by the Indemnity Agreement.

28  ///

15.

1.      **"[Great American's] failure to continue bonding . . . has caused lost profits and punitive damages."  Counterclaim, 1:13-14.**

The Indemnity Agreement provides in pertinent part:

**DECLINE EXECUTION**

ELEVENTH:  The Surety at its options and sole discretion decline to execute any Bond and the Undersigned agree to make no claim to the contrary in consideration of the Surety's receiving this Agreement; and if the Surety shall execute Bid, Proposal Bonds or Bid or Commitment Letters, Surety shall have the right at its option and sole and unfettered discretion to decline to execute any or all of the Bonds that may be required in connection with any award that may be made under the proposal for which the Bid, Proposal Bond or Bid or Commitment Letter is given and such declination shall not diminish or alter the liability of the Undersigned to the Surety under this Agreement that may arise by reason of having executed the Bid, Proposal Bond or Bid or Commitment Letters.

Pursuant to the provisions in the Indemnity Agreement, Defendants authorized Great American to stop bonding Menefee Construction at any time, and at Great American's sole discretion.  Because this right is expressly authorized by the Indemnity Agreement, as a matter of law, Great American cannot violate the covenant of good faith and fair dealing for exercising that right.  Therefore, this allegation should be stricken from the Counterclaim.

2.      **"[Great American's] failure to . . . properly investigate claims has caused lost profits and punitive damages."  Counterclaim, 1:13-14.**

The Indemnity Agreement provides in pertinent part:

**SETTLEMENT**

FOURTEENTH:  The Surety shall have the right to adjust, settle or compromise any claim, demand, suit, arbitration proceeding or judgment upon the Bonds.  The liability of the Undersigned to the Surety under this Agreement shall extend to and include all amounts paid by the Surety

16.

1    under the belief that: (1) the Surety was or might be liable therefore; or (2)

2    such payments were necessary or advisable to protect any of the Surety's

3    rights or to avoid or lessen Surety's liability or alleged liability.  Further,

4    the liability of the Undersigned to the Surety under this Agreement shall

5    include interest from the date of Surety's payment at the maximum rate

6    permitted in the jurisdiction in which this Agreement is enforced, or is

7    enforceable.  Further the Surety shall have the right to adjust, settle,

8    prosecute, compromise or pursuer recover in connection with any claim,

9    demand, suit, arbitration proceeding or judgment in connection with any

10   contract whether bonded or not, or in connection with any matters that are

11   the subject of Paragraph 5 "Assignments" of this Agreement.

12        Pursuant to the provisions in the Indemnity Agreement, Defendants gave Great

13   American "the right to adjust, settle or compromise any claim, demand, suit, arbitration

14   proceeding or judgment upon the Bonds."  Further, Defendants authorized Great American

15   to make "payments  . . . necessary or advisable to protect any of the Surety's rights or to

16   avoid or lessen Surety's liability or alleged liability."  Pursuant to the Indemnity Agreement,

17   Defendants authorized Great American to protect its own interests, not the interests of

18   Defendants.  Because these rights are expressly authorized by the Indemnity Agreement, as

19   a matter of law, Great American cannot violate the covenant of good faith and fair dealing

20   for exercising these rights.  Therefore, this allegation should be stricken from the

21   Counterclaim.

22        **3.    "[Great American's] improper investigation resulted in the take**

23             **over agreement with Bond Obligee on September 27, 2005."**

24             **Counterclaim, 1:15-16.**

25        The Indemnity Agreement provides in pertinent part:

26   ///

27   ///

28   ///

17.

**TAKEOVER**

SIXTH:  In the event of any breach, delay or default asserted by the obligee in connection with any Bond or any contract covered by the Bonds, or if the Undersigned has suspended or ceased work on any contract or contracts covered by any Bonds, or failed to pay obligations incurred in connection therewith, . . . Surety shall have the right, but not the obligation, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any Bonds, and at the expense of the Undersigned to complete or arrange for the completion of the same, and the Undersigned shall promptly upon demand pay to the Surety all losses, costs, and expenses so incurred.

Pursuant to the provisions in the Indemnity Agreement, Defendants gave Great American the right to takeover a contract upon which Menefee Construction defaulted. Regarding the two contracts alleged in the Counterclaim, the County of Madera defaulted and terminated Menefee Construction on both.  Consequently, Great American exercised its rights under the Indemnity Agreement to takeover both contracts.  Because these rights are expressly authorized by the Indemnity Agreement, as a matter of law, Great American cannot violate the covenant of good faith and fair dealing for exercising these rights. Therefore, this allegation should be stricken from the Counterclaim.

**4.      "[Michael Menefee] submitted pay estimate (sic) to [Great American] and was informed by [Great American] that 'all we have done on the Madera County projects is monitor the completion of the work.'" Counterclaim, 2:2-4.**

Pursuant to the settlement, takeover, assignment of rights, and other provisions of the Indemnity Agreement, as well as the terms of the alleged Takeover Agreements, Great American took over both of the Madera contracts, used Menefee Construction to complete

18.

1  the work under both contracts (including the required paperwork such as pay estimates), and

2  monitored the completion efforts.  Because these rights are expressly authorized by the

3  Indemnity Agreement, as a matter of law, Great American cannot violate the covenant of

4  good faith and fair dealing for exercising these rights.  Therefore, this allegation should be

5  stricken from the Counterclaim.

6        **5.**    **"Had [Great American] supported [Michael Menefee] in denial of the**

7                   **termination on the Madera County projects and City of Fresno projects,**

8                   **[Michael Menefee] would have been allowed the opportunity to resolved**

9                   **(sic) the dispute and recover additional compensation from obliges (sic)."**

10                  **Counterclaim, 2:4-7.**

11  Pursuant to the provisions in the Indemnity Agreement, Defendants gave Great

12  American "the right to adjust, settle or compromise any claim, demand, suit, arbitration

13  proceeding or judgment upon the Bonds."  Further, Defendants authorized Great American

14  to make "payments  . . . necessary or advisable to protect any of the Surety's rights or to

15  avoid or lessen Surety's liability or alleged liability."  Pursuant to the Indemnity Agreement,

16  Defendants authorized Great American to protect its own interests, not the interests of

17  Defendants.  Because these rights are expressly authorized by the Indemnity Agreement, as

18  a matter of law, Great American cannot violate the covenant of good faith and fair dealing

19  for exercising these rights.  Therefore, this allegation should be stricken from the

20  Counterclaim.

21        **6.**    **"Actions by [Great American] interfering with [Michael Menefee's]**

22                   **business with take over agreements, and letters to agencies that have**

23                   **contracts with [Michael Menefee] to not pay [Michael Menefee] for work**

24                   **performed, has allowed the obliges (sic) to recover an amount greater**

25                   **than would have been recovered if [Great American] had not acted."**

26                   **Counterclaim, 2:8-11.**

27  In addition to the provisions quoted above, the Indemnity Agreement provides in

28  pertinent part:

**ASSIGNMENT**

THIRD:  The Undersigned hereby consenting, will assign, transfer and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and say other indebtedness and liabilities of the Undersigned to the Surety, whether heretofore or hereafter incurred, the assignment to become effective retrospective to the date of the first bond, . . . (a) All the rights of the Undersigned in, and growing in any manner out of the Bonds or any contracts referred to in the Bonds; (b) All the rights, title and interest of the Undersigned in and to all machinery, equipment, vehicles, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites; (c) All the rights, title and interest of the Undersigned in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts; (d) All actions, causes of actions, claims and/or the process therefrom and any demands whatsoever which the Undersigned may have or acquire against any party, including but not limited to owners, obligees, subcontractors, laborers or materialmen, architects, engineers or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any party including but not limited to, prime contractors, subcontractors, laborers, or materialmen; (e) Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all

20.

1     contracts referred to in the bonds and all other contracts whether bonded

2     or not in which the Undersigned has an interest; (f) any and all accounts

3     receivable, marketable securities, rents, proceeds of sale, instruments,

4     chattel, paper, letters of credit, documents of title, bills of lading, federal

5     tax refunds, state and local tax refunds, and general intangibles; (g) any

6     and all policies of insurance.

* * *

**ATTORNEY IN FACT**

9        NINETEENTH:  The Undersigned hereby irrevocably nominate,

10     constitute, appoint and designate the Surety as their attorney-in-fact with

11     the right, but not the obligation, to exercise all of the rights of the

12     Undersigned assigned, transferred and set over to the Surety in this

13     Agreement, and in the name of the Undersigned to make, execute, and

14     deliver any and all additional or other assignments, documents or papers

15     deemed necessary and proper by the Surety in order to give full effect not

16     only to the intent and meaning of the within assignments, but also to the

17     full protection intended to be herein given to the Surety under all other

18     provisions of this Agreement.  The Undersigned hereby ratify and confirm

19     all acts and actions, taken and done by the Surety as such attorney-in-fact.

20        Pursuant to the provisions in the Indemnity Agreement, Defendants gave Great

21  American the right to enter into takeover agreements and the right to send project owners or

22  obligees letters concerning the contract funds.  Because these rights are expressly authorized

23  by the Indemnity Agreement, as a matter of law Great American cannot violate the covenant

24  of good faith and fair dealing for exercising these rights.  Therefore, this allegation should

25  be stricken from the Counterclaim.

26  ///

27  ///

28  ///

21.

7.    "[Great American's] actions have resulted in financial

hardship on [Michael Menefee] resulting in additional bond

claims."  Counterclaim, 2:12-13.

As set forth above, all of the "actions" allegedly taken by Great American were expressly authorized by the Indemnity Agreement.  As a matter of law, Great American cannot violate the covenant of good faith and fair dealing for exercising these rights. Therefore, this allegation should be stricken from the Counterclaim.

8.    "Actions of [Great American] that resulted in the interference of normal

business practices of [Michael Menefee] have voided the contractual

obligation of the Indemnity Agreement."  Counterclaim, 2:13-15.

Pursuant to the provisions of the Indemnity Agreement, including, but not limited to, the settlement, takeover, assignment, and attorney in fact provisions, Great American was expressly authorized to perform the actions alleged.  Further, even if actions by Great American "resulted in the interference of normal business practices," as a matter of law, that does not void the contractual obligations of the Indemnity Agreement.  Regardless of this erroneous assertion, all of the alleged actions allegedly taken by Great American were expressly authorized by the Indemnity Agreement.  As a matter of law, Great American cannot violate the covenant of good faith and fair dealing for exercising these rights. Therefore, this allegation should be stricken from the Counterclaim.

IV.  **MICHAEL MENEFEE'S PRAYER FOR RELIEF MUST BE STRICKEN AS THE COUNTERCLAIM DOES NOT ALLEGE FACTS WHICH WOULD CONSTITUTE AN ADEQUATE SHOWING OF LOST PROFIT, REVENUE OR PUNITIVE DAMAGES AND SHOULD BE STRICKEN PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(F).**

A.    **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(f), the Court may order stricken from any pleading any redundant, immaterial, impertinent or scandalous matter. (*Bureerong v. Uvawas*, 922 F.Supp. 1450, 1478 (C.D. Cal. 1996).)  A motion to strike may be used to strike a prayer for relief where the damages sought by the pleading party are not recoverable as a matter of law.  (*Tapley v. Lockwood Green Engineers, Inc.*, 502 F.2d. 559, 560 (8th Cir.

22.

1    1974).)  Motions to strike pursuant to 12(f) are also appropriate to strike claims for punitive

2    damages, when punitive damages are not recoverable as a matter of law.  (*Wilkerson v.*

3    *Butler*, 229 F.R.D. 166 (E.D.Cal. 2005).)

4    **B.     MICHAEL MENEFEE DOES NOT STATE FACTS SUFFICIENT TO
             CONSTITUTE A CLAIM FOR PUNITIVE DAMAGES**.

5
           **1.     California Law Governs Michael Menefee's Substantive Claim
6                    for Punitive Damages.**

7           Courts look to the *Erie* Doctrine to determine when a legal issue is a matter of

8    substance, and therefore governed by state law, and when a legal issue in an action is a

9    matter of procedure and thus governed by federal law.  (*Erie Railroad Co. v. Tompkins*, 304

10   U.S. 64, 78 (1938).)  The *Erie* doctrine requires that federal courts in diversity actions apply

11   the substantive law of state in which the court sits.  (*Id.*)  The burden of proof or burden of

12   persuasion applicable to a particular claim or issue is considered substantive for purposes of

13   the *Erie* Doctrine; therefore, state law determines that standard for the burden of proof or

14   persuasion.  (*American Dredging Co. v. Miller*, 510 U.S. 443, 454 (1994).)

15          Pleading punitive damages requires a heightened standard of proof under California

16   law.  (California Civil Code section 3294(a).)  A determination of the burden of proof

17   required for punitive damages is a matter of substantive law, and, therefore, a court should

18   look to California law.  It follows that in a federal diversity action based on California law,

19   the pleading party has the burden of proof on each element required for an award of punitive

20   damages pursuant to Section 3294.

21          **2.     California Civil Code section 3294 Mandates That In Order to
                     Plead Punitive Damages, Michael Menefee Must Prove By Clear
22                   and Convincing Evidence that Great American Has Been Guilty
                     of Oppression, Fraud or Malice**.
23
     California Civil Code section 3294 states:
24
                 (a)     In an action for the breach of an obligation not arising from
25                       contract, where it is proven by clear and convincing evidence
                         that the defendant has been guilty of oppression, fraud, or
26                       malice, the plaintiff, in addition to the actual damages, may
                         recover damages for the sake of example and by way of
27                       punishing the defendant . . . .
                                         * * *
28
                                         23.

(c)   As used in this section, the following definitions shall apply:

(1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

(2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

(3) "Fraud" means an intentional misrepresentation, deceit or concealment of a material fact known to the defendant with the intention on the part of the defendant thereby depriving a person of property or legal rights or otherwise causing injury.

A claim for punitive damages must be plead in compliance with Section 3294, and must include factual allegations which would support a showing of malice, oppression, fraud, or deceit, by clear and convincing evidence. Punitive damages are distinct from general damages because they are imposed as punishment in the case of serious misconduct, and, therefore, they cannot be recovered without a clear showing of malice, oppression or fraud as the basis for the award. (*Hall v. Berkell*, 130 Cal.App.2d 800, 803-805 (1955).)

Michael Menefee specifically requests punitive damages in his prayer for relief, yet he fails to comply with California law in that request. Michael Menefee's allegations are completely lacking in facts or allegations which would support the heightened standard of proof requirement in California for punitive damages. Nowhere in the Counterclaim does Michael Menefee allege oppression, fraud or malice, let alone at a level that would constitute clear and convincing evidence. As previously stated above, the Counterclaim asserts the eight allegations against Great American.

Not one of those allegations includes any mention of malice, oppression or fraud. Nor does Michael Menefee allege facts sufficient to rise to the level of clear and convincing evidence. All that is detailed in the Counterclaim are general allegations, unsupported by facts, none of which would support an award of punitive damages. For the foregoing reasons, Michael Menefee's claim for punitive damages should be stricken.

24.

3.      **California Law Does Not Allow the Recovery of Punitive Damages for Actions Based on Contract**.

Punitive damages are not recoverable in actions based on contract, even if the defendant's conduct is considered willful, oppressive or malicious under California Civil Code section 3294.  (*Myers Building Industries, Ltd. v. Interface Technology, Inc.*, 13 Cal.App.4th 949, 960 (1993).)  Michael Menefee alleges three causes of action in his Counterclaim.  Breach of contract and breach of the implied covenant of good faith and fair dealing are contract-based causes of action; therefore, Michael Menefee cannot assert a claim for punitive damages as a matter of law.  "Unfair and Deceptive Claim Actions" is a cause of action unsupported by the common law or by statute, and, therefore, Michael Menefee should also not be able to recover punitive damages as a matter of law.

a.      **A Cause of Action for The Implied Covenant of Good Faith and Fair Dealing Does Not Allow the Recovery of Punitive Damages Because it is Based in Contract.**

Generally speaking, a breach of the covenant of good faith and fair dealing gives rise to an action in contract.  (*Wolf v. Superior Court*, 107 Cal.App.4th 25, 31 (2003).)  The covenant of good faith and fair dealing is essentially a contract term; therefore, compensation for its breach has almost always been limited to contract rather than tort remedies.  (*Cates Construction v. Talbot Partners*, 21 Cal.4th 28, 43 (1999).)  The only situation where a breach of the implied covenant of good faith and fair dealing can give rise to an action in tort rather than contract is in the context of an insurance policy.  (*Id.* at 86.)  Tort recovery used to be available for an employer's breach of the covenant of good faith and fair dealing with an employee.  (*Id*. at 46.)  However, the California Supreme Court now recognizes that tort recovery is *not* available in that employer/employee situation because the employment relationship is not sufficiently similar to that of an insurer and insured to warrant judicial extension of the proposed additional tort remedies in view of economic policy concerns arising out of an upset of the traditional separation of tort and contract law.  (*Id.* at 46.)  This comment in the *Cates* decision indicates that the California Supreme Court supports a *narrowing* of the exception allowing a breach of the implied covenant of good faith and fair dealing to give rise to an action in tort rather than in contract.

25.

1    Because a breach of the implied covenant of good faith and fair dealing gives rise to

2    an action in contract, and because California law does not permit the recovery of punitive

3    damages in actions based on contract, Michael Menefee cannot assert a claim for punitive

4    damages under his cause of action for Breach of the Implied Covenant of Good Faith and

5    Fair Dealing.

6                           **b.      Punitive Damages Should Not Be Recovered On A Cause
                                     of Action for "Unfair and Deceptive Claim Actions"**
7                                    **Because It Is Not Supported by Common Law or Statute**.

8    Great American is unaware of any common law cause of action for "Unfair or

9    Deceptive Claim Actions." Nor is Great American aware of any statutory authority

10   supporting a cause of action for "Unfair and Deceptive Claim Actions." For that reason

11   Great American cannot respond to Michael Menefee's assertion as there is no indication if a

12   cause of action for "Unfair or Deceptive Claim Actions" is based in tort, or based in

13   contract. Michael Menefee should not be able to assert a claim for punitive damages under

14   his cause of action for "Unfair and Deceptive Claim Actions."

15   **C.    MICHAEL MENEFEE DOES NOT STATE FACTS SUFFICIENT TO
             CONSTITUTE A PRAYER FOR DAMAGES FOR LOST PROFIT**.
16
17                           **1.     Michael Menefee Does Not Have Standing to Request Damages
                                     For Lost Profit**.

18   Menefee Construction is a corporation, and Michael Menefee does not have standing

19   to sue on its behalf. (*Jones v. H.F. Ahmanson & Co*., 1 Cal.3d 93, 107 (1969); *Vinci v.*

20   *Waste Management, Inc*., 36 Cal.App.4th 1811, 1815 (1995).) Menefee Construction is the

21   only business entity opposing Great American in this action, and, therefore, the only

22   business entity able to suffer damages in the form of lost profit. Because Michael Menefee

23   does not have standing to sue on behalf of Menefee Construction, Michael Menefee does not

24   have standing to request damages for any lost profit of Menefee Construction. Therefore,

25   Michael Menefee's claim for damages for lost profit should be stricken in its entirety.

26   ///

27   ///

28   ///

1

2

      **2.**      **Michael Menefee Fails to Plead Damages For Lost Profits With Specificity Pursuant to Federal and California Law; Therefore, His Claim for Lost Profits Should Be Stricken**.

3

4

5

      As previously discussed, the burden of proof or persuasion is an issue of substantive law for purposes of the *Erie* Doctrine, and is therefore determined by the law of the state in which the federal court sits.  (*American Dredging Co. v. Miller*, 510 U.S. 443, 454 (1994).)

6

7

8

9

10

11

      Pleading contract damages requires a higher standard of proof under California law.  (*Carpenter Foundation v. Oakes*, 26 Cal.App.3d 784, 800 (1972).)  A determination of the burden of proof required for contract damages is a matter of substantive law, and, therefore, a court should look to California law.  It follows that in a federal diversity action based on California law, the pleading party has the burden of proof on each element required for an award of contract damages.

12

13

14

15

16

      Pursuant to California law, claims for contract damages must be stated with certainty.  (California Civil Code section 3301.)  This is true for lost profits as damages because if recoverable, lost profits are considered by courts to be special rather than general damages, and therefore must be pled with particularity.  (*Lewis Jorge Construction Management v. Pomona Unified School District*, 34 Cal.4th 960, 975 (2004).)

17

18

19

20

21

22

23

24

25

      Michael Menefee does not plead with sufficient certainty or particularity to clarify exactly how Great American has caused Menefee Construction to suffer lost profits, nor has Michael Menefee indicated the amount of damage Menefee Construction has suffered in the form of lost profits.  Not one of Michael Menefee's eight allegations listed above contains sufficient facts or supporting evidence stated with certainty or particularity.  There is no clear indication that Menefee Construction suffered lost profits because of Great American's actions, nor does Menefee include a sufficient accounting of those alleged lost profits.  In the absence of such supporting evidence, Michael Menefee's claim for lost profits must be stricken in its entirety.

26

///

27

///

28

///

1

**D.    MICHAEL MENEFEE DOES NOT STATE FACTS SUFFICIENT TO CONSTITUTE A PRAYER FOR LOST REVENUE.**

2

3

**1.    Michael Menefee Does Not Have Standing to Request Damages for Lost Revenue**.

4        Menefee Construction is a corporation, and Michael Menefee does not have standing

5  to sue on its behalf.  (*Jones*, 1 Cal.3d at 107; *Vinci*, 36 Cal.App.4th at 1815.)  Menefee

6  Construction is the only business entity opposing Great American in this action, and is

7  therefore the only business entity able to suffer damages in the form of lost revenue.

8  Because Michael Menefee does not have standing to sue on behalf of Menefee Construction,

9  Michael Menefee does not have standing to request damages for any lost revenue of

10  Menefee Construction.  Therefore, Michael Menefee's claim for damages for lost revenue

11  should be stricken in its entirety.

12

13

**2.    Michael Menefee Fails To Plead Damages For Lost Revenue With The Specificity Required By Federal And California Law; Therefore, The Claim For Lost Revenue Should Be Stricken**.

14        Again, claims for contract damages must be stated with certainty.  (California Civil

15  Code section 3301.)  Much like Michael Menefee's claim for lost profits, the claim for lost

16  revenue is an alleged damage suffered by Menefee Construction and must be plead

17  according to the heightened standards as set forth in the *Lewis Jorge* case.  (*Lewis Jorge,* 34

18  Cal.4th at 975.)  Not one of Michael Menefee's eight allegations listed above contains

19  sufficient facts or supporting evidence stated with certainty or particularity.  There is no

20  clear indication that Menefee Construction suffered lost revenue because of Great

21  American's actions, nor does Michael Menefee include a sufficient accounting of the alleged

22  lost revenue.  In the absence of such supporting evidence, Michael Menefee's claim for lost

23  revenue must be stricken in its entirety.

24

## CONCLUSION

25        The Counterclaim is untimely because it was not filed within the time required by

26  the Federal Rules of Civil Procedure, and because this Court has entered the defaults of all

27  three Defendants thereby cutting off their right to appear or respond in this action.

28  Therefore, the Counterclaim should be dismissed in its entirety.

28.

1    Pursuant to Local Rule 83-183, Michael Menefee does not have standing to sue on

2    behalf of either Deborah Menefee or Menefee Construction, and, therefore, the

3    Counterclaim should be dismissed in its entirety as to Deborah Menefee and Menefee

4    Construction.

5    Michael Menefee fails to state a claim on which relief could be granted for breach of

6    contract, breach of the implied covenant of good faith and fair dealing, or "Unfair or

7    Deceptive Claim Actions," and each of those causes of action should be dismissed, or,

8    alternatively, stricken, from the Counterclaim.

9    Finally, Michael Menefee fails to allege facts sufficient to constitute a claim for lost

10   profit, lost revenue, or punitive damages, and that relief should be stricken from the prayer

11   for relief.

12   Therefore, Great American respectfully requests that this Court dismiss or,

13   alternatively, strike the Counterclaim in its entirety.

14

15   Dated:      July 10, 2006                         WOLKIN • CURRAN, LLP

16                                       *Original signature retained by attorney.*
                                                 *s/James D. Curran*

17                                       By: _____
                                                  James D. Curran

18                                       Attorneys for Plaintiff
                                         GREAT AMERICAN INSURANCE COMPANY

19

20

21

22

23

24

25

26

27

28

29.